RESSLER *v.* O'MALLEY.

1. SPECIFIC PERFORMANCE — NATURE OF REMEDY — DISCRETION OF COURT.

Specific performance is not a remedy of right and whether it is granted in a particular case rests in the sound discretion of the court, exercised in the light of the facts involved.

2. SAME—COVENANT TO SUPPLY WELL WATER FOR DWELLING PURPOSES—FUTURE CONTROVERSIES—ADEQUACY OF REMEDY AT LAW.

Specific performance of covenant in land contract and deed that defendants would supply plaintiffs with well water for dwelling purposes from well on defendants' adjoining land by underground pipe for $10 per year is not granted, where it appears that pipe is available for making a well, that no attempt has been made to obtain a satisfactory supply of safe water from a well as deep as defendants' well, agreement is silent as to repair or replacement of pipes or specific quantity of water needed, any direction that the court might make in the premises would open the door to future disagreements between the parties, remedy at law would appear to be adequate and a certain amount of animosity has developed between the parties.

REFERENCES FOR POINTS IN HEADNOTES
[1] 49 Am Jur, Specific Performance, §§ 8, 9.
[2-4] 49 Am Jur, Specific Performance, §§ 10–14.

3. COVENANTS—RUNNING WITH LAND—BREACH—ADEQUACY OF REM-
EDY AT LAW.

   An action at law for damages may be considered a reasonable
   and adequate remedy for breach of a covenant running with
   the land.

4. SPECIFIC PERFORMANCE—COVENANT TO SUPPLY WELL WATER.

   Specific performance need not be granted plaintiffs of cove-
   nant in land contract and deed to defendants that latter
   would supply plaintiffs with well water for dwelling purposes
   where the remedy at law would appear to be adequate in
   that from proofs adduced it cannot be said that an adequate
   water supply may not be obtained by plaintiffs on their own
   premises.

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted June 9, 1950. (Docket No. 59, Calendar
No. 44,662.) Decided September 11, 1950.

Bill by Elmer M. Ressler and wife against Francis
George O'Malley and wife for specific performance
of contract to furnish water. Decree for defend-
ants. Plaintiffs appeal. Affirmed.

*Daniel W. Ross* and *Walter M. Nelson,* for plain-
tiffs.

*Cozadd, Shangle & Cherry,* for defendants.

CARR, J. The plaintiffs in this case were, on the
8th of March, 1941, and prior thereto, the owners of
80 acres of farm land located in Superior township,
Washtenaw county. On the date mentioned they
entered into a land contract with the defendants for
the sale of said property, excepting, however, 10
acres of the description on which was located the
residence of the vendors. The parties incorporated
in the agreement the following clause, which is di-
rectly involved in this litigation:

"It is also understood and agreed by the parties hereto that well water for dwelling on the 10 acres reserved is supplied by underground pipe and pressure pump from well on the 70 acres hereby conveyed and purchasers hereby agree to furnish sellers with water required for dwelling purposes from said well for the sum of $10 per year."

Defendants took possession of the 70 acres as described in the land contract, and for a period of over 2 years continued to furnish water to the plaintiffs' residence in accordance with the contract. In August, 1943, the service was discontinued, due apparently to certain matters that occurred in the relations of the parties. On October 13th following a deed was executed by plaintiffs and delivered to defendants pursuant to the land contract, which deed contained the provision above quoted with reference to the furnishing of water.

During the time that water was being supplied to their residence, plaintiffs drilled on their 10-acre parcel a well approximately 43 feet in depth. It is their claim in the instant case that they did so in order to obtain water for irrigating purposes, that the well was not made deeper because of the difficulty in obtaining pipe, that the quantity of water from said well was not sufficient to take care of desirable irrigation and also necessary domestic use within the home, and that the water was not safe for drinking purposes unless boiled. In this connection it may be noted that a sample submitted to the Washtenaw county health department was found free from contamination. Apparently plaintiffs did not submit further samples although advised by the department that frequent submission of water samples for analysis should be made to insure the absence of contamination in the water. Plaintiffs claim that they were damaged because unable to use sufficient water to produce satisfactory crops of strawberries

and raspberries. There is no showing as to the quantity of water reasonably required by them for irrigating purposes during a normal season.

In December, 1944, plaintiffs brought an action against defendants in the circuit court of Washtenaw county to recover damages. The first count of the declaration was based on an alleged breach of the provision of the contract and deed above quoted. In other counts of the declaration plaintiffs sought further damages because of injuries to certain farm tools and the alleged conversion by defendants of wood, straw, and a farm bell. A bill of particulars was filed, setting up the various items of the plaintiffs' claims. Included therein was an item of $400 covering the cost of the well above referred to, and the further sum of $850 as the estimated cost for drilling an adequate well to supply water to the plaintiffs. Various items of damage claimed to have resulted from the lack of water facilities were also set forth.

In their answer to the declaration defendants claimed that it was understood that the agreement to furnish water was temporary in character and was to remain in force and effect only until plaintiffs had an opportunity to drill a well on the 10-acre parcel. They also alleged that the water furnished by them had not been used exclusively for dwelling house purposes in that plaintiffs had employed it for maintenance of livestock and had allowed other persons living in the vicinity to obtain their supply therefrom. Defendants also denied liability under the other counts in the declaration, and filed a cross-declaration in which they sought damages from the plaintiffs and cross-defendants for obstructing a right of way to which defendants claimed they were entitled, for the conversion of certain items of personal property, and for improper use of a farm building on the property that the defendants had ac-

quired. The case was tried before a jury, by which a verdict in the sum of $600 in favor of the plaintiffs was returned. Judgment was entered in accordance with the verdict, and subsequently the amount of the judgment was paid to the plaintiffs.

The bill of complaint in the present case was filed May 12, 1947. The plaintiffs therein ask for a mandatory injunction to require defendants to furnish water to them for dwelling purposes from the well on defendants' property, to maintain and operate the said well, underground pipes, and pressure pump in reliable working condition, and to "furnish water to the occupants of said 10 acres dependably for dwelling purposes." On behalf of plaintiffs it is claimed that the undertaking to furnish water is of such nature as to amount to a covenant running with the land, to the performance of which they are now entitled. Defendants assert in their answer that under the facts of the case plaintiffs are not entitled to equitable relief, that the bringing of the action for damages in December, 1944, and the obtaining of judgment therein, constituted an election of remedies, that the decision in the prior case is *res judicata* of the issues involved in the present suit in equity, and that the agreement between the parties was of a personal character rather than an undertaking or covenant running with the land.

Following a hearing of the case the trial judge came to the conclusion that the plaintiffs had an adequate remedy at law. The opinion filed further referred to the issues raised in the prior action for damages, and pointed out the difficulties involved in enforcing an equitable decree of the nature sought by plaintiffs. A decree was accordingly entered dismissing the bill of complaint. Plaintiffs have appealed.

It is settled by prior decisions of this Court that specific performance is not a remedy of right.

Whether it is granted in a particular case rests in the sound discretion of the court, exercised in the light of the facts involved. *Dysarz* v. *Janczarek,* 238 Mich 529; *St. Pierre* v. *Masson,* 243 Mich 60; *Keys* v. *Hopper,* 270 Mich 504. It is a fair inference that when the plaintiffs brought their action for damages they considered such remedy an adequate one under the circumstances. They then treated as breached the contract that they now seek to enforce in equity. The claim made for the estimated cost of putting down a well equal in depth to that on the 70-acre tract (170 feet) clearly indicates that at the time they intended to take care of the situation by drilling an adequate well on their own property, and considered that they could do so with satisfactory results.

From the record before us it cannot be said on what specific items claimed the award of damages made by the jury was based. It does appear that a witness for plaintiffs in the prior case, who was an experienced well driller, estimated the cost of a well of the desired depth at the sum of $510. The testimony of the witness further indicated that pipe could be obtained for such purpose. The same witness testified for plaintiffs on the hearing in the instant case. He stated that he had followed his business in the counties of Wayne, Washtenaw and Oakland, for about 30 years, that he had drilled the well on the defendants' land, and was familiar with the property of the plaintiffs. He stated further that he knew of no farm in the vicinity where he had been unable to strike water, that during the war pipe could be procured on a priority order, that thereafter there was some difficulty in obtaining it until February, 1949, when conditions improved and pipe could be obtained "without paying too much money for it."

Plaintiff Elmer M. Ressler in his testimony indicated that no adequate well had been put down to supply water to the residence on the 10-acre parcel because of the impossibility of obtaining pipe, and further because well drillers would not guarantee a satisfactory supply of water. However, plaintiffs have not shown specific efforts by them to purchase pipe, and, as above noted, the testimony of their witness fairly indicates that it could have been obtained. The fact that well drillers were unable to say with certainty that a well in a particular location would produce the desired quantity and quality of water is not persuasive that a suitable well could not be drilled on plaintiffs' property with reasonable assurance of obtaining a satisfactory water supply. The situation in this regard is the same as at the time the action for damages was instituted in December, 1944.

The distance between plaintiffs' house and the well on defendants' property is approximately 500 feet, 200 across the land of plaintiffs and 300 on defendants' land. It will be noted that the water agreement as set forth in the contract and in the deed does not in terms give defendants the right to go on plaintiffs' property to repair or replace pipes. Neither does it give to plaintiffs any right to go on the property of defendants. It is wholly silent as to repairs except as the same may be implied from the agreement, which in terms contemplates the furnishing of water for an agreed price per year. There is no provision as to the quantity of water. It may be inferred that the parties had in mind the furnishing of a reasonable supply for use in plaintiffs' residence, but obviously the quantity required would vary with the number of occupants. A decree requiring the performance of an undertaking of this character should be specific in its provisions. There is no basis in this record, however, for determining

the quantity of water that should be furnished each day. A direction that defendants deliver such quantity as may reasonably be required for the uses in question would open the door to future disagreements between the parties.

In reaching the conclusion that equitable relief should be denied to the plaintiffs, the trial court said in part:

"It would be difficult for equity to supervise, as plaintiffs claim, the continuous, perpetual flow of water for dwelling house purposes, when the animosity between the parties here would continually bring into issue the matter of whether or not plaintiffs were using water for irrigation purposes, for the use of livestock, or for any other purposes than dwelling house purposes.

"I must conclude that plaintiffs have an adequate remedy at law, and that this court will not assume jurisdiction to specifically determine annually, as the differences may arise, and permanently, the question of damages as between the litigants here. They have a remedy at law without recourse to the equity side of the court."

Counsel for plaintiffs, prior to the introduction of testimony on the hearing, asked for the entry of a decree on the pleadings. In so doing he seems to have recognized the difficulty involved in compelling defendants to furnish water to plaintiffs, saying:

"I think we ought to have now a decree that this covenant running with the land must be fully enforced in accordance with its terms, and, that, upon the failure of the defendants so to do automatically they should pay a stated penalty to the plaintiffs for the continued refusal to perform in this covenant, and that, of course, would have some relation to the deprivation of the dominant estate of service required of the servient estate."

The situation is somewhat analogous to that in *Bradfield* v. *Dewell*, 48 Mich 9. There the plaintiff sought injunctive relief to protect his right to the use of water from the Thornapple river. Involved in the case was the maintenance of a dam across the river which forced the water through a canal. In reversing a decree for the plaintiff this Court came to the following conclusion (quoting from the syllabus):

"*Held further,* that considering the nature of the structure to be maintained, the liability to perpetual controversies concerning the performance by the parties respectively of their duties in regard to it, and concerning the use or waste of water by them, and the necessity that would exist that the court, if it assumed jurisdiction and awarded an injunction, should have perpetual oversight in respect to the conduct enjoined, the case was not a proper one for equitable jurisdiction, and that complainant should find his remedy at law."

We think the trial court was correct in his conclusion that under the situation involved plaintiffs are not entitled to relief in equity. If they feel that they are entitled to damages in addition to those obtained in the prior case, they should pursue their remedy at law. That it is available for breach of an agreement of this nature is, of course, not open to question. In *Mueller* v. *Bankers Trust Co. of Muskegon,* 262 Mich 53, the vendor in a land contract agreed to construct a bridge to permit access to the property sold. A bridge was built but proved to be unsubstantial, and it was destroyed by high water. It was held that the undertaking was a covenant running with the land, and that in consequence the assignee of the vendee could maintain an action in assumpsit to recover damages. The case was remanded to the trial court for the entry of judgment for the dam-

ages shown by the proofs. If the agreement in the case at bar is regarded as a covenant running with the land, as plaintiffs claim, an action at law for damages may nonetheless be considered a reasonable and adequate remedy. See *Detroit Trust Co.* v. *Mortensen*, 273 Mich 407; *Burghard* v. *Detroit Trust Co.*, 273 Mich 629. As before noted, such was the position of the plaintiffs when they started their action in the Washtenaw county circuit court.

We are not here dealing with a plain and unambiguous agreement for the sale of land as in *Tiley* v. *Chapman*, 320 Mich 173, which counsel for plaintiffs cite in their brief. In view of the proofs it cannot be said that an adequate water supply may not be obtained by plaintiffs on their own premises. It is a reasonable probability that the drilling of a proper well will give to them what they are asking equity to compel defendants to furnish. Under such circumstances equity should not assume jurisdiction. The situation here involved is wholly different from that in *Murphy* v. *Kerr* (CCA), 5 F2d 908 (41 ALR 1359), which plaintiffs quote in their brief. That case involved the carrying out of a covenant in a conveyance of real property under which the grantor undertook to pump from the Pecos river in Eddy county, New Mexico, water for the grantee for irrigation and power purposes. The same comment may be made with reference to *Johnson* v. *American Gas Co.*, 8 Ohio App 124, which involved the delivery of gas to plaintiff's residence by way of consideration for the use of a right of way by the gas company over the property of plaintiff's predecessor in title. It did not appear in the case that the plaintiff could have obtained gas from any source other than the defendant.

In view of the facts involved in the case at bar we think that the trial judge was correct in his conclusion that equitable relief should be denied. A

discussion of the other questions raised by counsel in their briefs and on the oral argument is unnecessary to a decision. The decree of the trial court is affirmed, with costs to defendants.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.